**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRANK HRKACH, et al.,** | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 24-6837-KSM** |
| **SAMSUNG ELECTRONICS AMERICA, INC., et al.,** | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                    **August 11, 2025**

Plaintiffs Frank and Betty Hrkach bring this products liability action against Defendants Samsung Electronics America, Inc. ("SEA"), Home Depot U.S.A., Inc., and The Home Depot, Inc. (together, "Home Depot") to recover for property damage sustained from a fire allegedly caused by a defective oven range that was manufactured by SEA and sold to Plaintiffs by Home Depot. (Doc. No. 1-3.) Plaintiffs assert negligence, strict liability, and breach of warranties claims based on the inadvertent activation of their oven range's burner control knobs, which started the fire. (*Id.*) SEA moves to dismiss these claims (Counts I–III) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 16, 17, 24.) Home Depot joins SEA's motion. (Doc. No. 20.) Plaintiffs oppose the motion. (Doc. No. 23.) For the reasons discussed below, the Court grants SEA's motion.[1]

---

[1] The Court resolves this motion on the papers. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); L. Civ. R. 7.1(f) ("Any interested party may request oral argument on a motion. The court may dispose of a motion without oral argument.").

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

Accepting the allegations in the Complaint as true, the relevant facts are as follows.[2]  At some point prior to December 5, 2022, Plaintiffs purchased an oven range manufactured by SEA from Home Depot.  (Doc. No. 1-3 ¶¶ 3, 15.)  On December 5, 2022, the burner control knobs on Plaintiffs' oven range were unintentionally activated, and the "heat from the burner ignited combustibles at or near the stove causing fire damage[ ]" to Plaintiffs' property.  (*Id.* ¶¶ 16–18.)  As determined by a "subsequent investigation conducted after the loss," a "defect" in the oven range caused this unintentional activation of the burner control knobs.  (*Id.* ¶¶ 17–18.)  Seeking to recover for the fire damage to their property resulting from the "unintentional operation" of their stovetop, Plaintiffs bring claims for negligence, strict liability, and breach of warranties against SEA (Counts I–III) and Home Depot (Counts IV–IX).  (*Id.* ¶¶ 20–84.)

Plaintiffs filed this action in the Court of Common Pleas of Philadelphia County.  (*Id.*) SEA timely removed the case to this Court pursuant to 28 U.S.C. §§ 1332(a) and 1446(b).  (Doc. No. 1.)  SEA filed its instant motion to dismiss on January 29, 2025 (Doc Nos. 16, 17, 24), which Home Depot joined on February 11, 2025 (Doc. No. 20).  Plaintiffs oppose the motion.  (Doc. No. 23.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[2] "The District Court, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."  *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, a complaint that "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 at 555. And a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). Although the Court must accept as true the allegations in the complaint and all reasonable inferences therefrom, *Phillips*, 515 F.3d at 228, the Court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation," *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation omitted); *see Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (internal quotation omitted) (cleaned up)).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1999)). Accordingly, the Court may consider SEA's "informational recall" of the subject oven range in August 2024 as summarized in a statement issued by the United States Consumer Product Safety Commission, which both parties reference in their briefing. (*See* Doc. No. 17 at 8 n.2; Doc. No. 23-3; *see generally* Doc. No. 23.)

## III.     DISCUSSION

SEA contends that Plaintiffs' Complaint is merely a "generalized, boilerplate pleading[ ]" that fails to state plausible negligence, strict liability, or breach of warranties claims against SEA, and moves to dismiss those claims (Counts I–III) on that basis under Rule 12(b)(6).  (Doc. Nos. 17, 24.)  SEA advances three arguments in favor of dismissal.  First, all Plaintiffs' claims against SEA are deficient because the Complaint fails to allege causation, i.e., how any purported defect in their oven range actually or proximately caused the fire damage to their property.  (Doc. No. 17 at 10–12; Doc. No. 24 at 6–7.)  Second, Plaintiffs' negligence and strict liability claims premised on defective manufacturing and failure to warn theories are further factually deficient because the Complaint lacks allegations establishing a manufacturing defect or a failure to warn. (Doc. No. 17 at 13–16; Doc. No. 24 at 7–9.)  Third, Plaintiffs' breach of warranties claims lack any supporting factual allegations and simply parrot the legal standards for such claims.  (Doc. No. 17 at 16–19; Doc. No. 24 at 9.)  The Court agrees that Plaintiffs' claims against SEA are insufficiently pleaded in these respects and addresses SEA's arguments regarding each category of claims in turn below.

### A.     The Complaint Fails to State a Plausible Negligence Claim against SEA.

Plaintiffs premise their negligence claims (Count I)—aptly described by SEA as a "kitchen-sink pleading asserting every defect theory imaginable" (Doc. No. 17 at 13)—on numerous theories pertaining to SEA's manufacturing and design of the oven range at issue and related employment practices.  (*See* Doc. No. 1-3 ¶¶ 20–25.)  These negligence theories include: "failing to manufacture, assemble, sell, design, transport, distribute and/or market a properly functioning product;" "failing to properly inspect and/or test the product and/or its component parts;" "failing to properly determine that the product and/or its component parts were not in compliance with applicable standards;" "failing to provide safe and adequate warnings or

4

instructions with the product;" "manufacturing, marketing, distributing and/or selling the product when [SEA] knew or should have known that the product and/or its component parts would be inadequate for the reasons for which it was purchased;" "failing to adequately instruct, supervise, and/or train servants, employees and agents;" "failing to properly monitor the work of all agents and/or employees;" and "failing to retain competent, qualified, and/or able agents, employees or servants."  (*See id.*)

To state a claim for negligence under Pennsylvania law, a plaintiff must allege:  "(1) 'a legally recognized duty or obligation of the defendant,' (2) 'the breach thereof,' and (3) a 'causal connection' between the breach and the plaintiffs' damages."  *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 776 (3d Cir. 2018) (quoting *Green v. Pa. Hosp.*, 123 A.3d 310, 315–16 (Pa. 2015)).  "In a product defect case, a plaintiff must establish the second and third elements of this test by showing her injury was proximately caused by 'a specific defect in the manufacture or design of a product.'"  *State Farm Fire & Cas. Co. v. Traditions of Am., LP*, No. 20-cv-01114, 2021 WL 8362166, at *4 (M.D. Pa. Dec. 28, 2021) (quoting *Brandon v. Ryder Truck Rental, Inc.*, 34 A.3d 104, 110 (Pa. Super. 2011)), *report and recommendation adopted*, 2022 WL 1485186 (M.D. Pa. Jan. 28, 2022).

SEA argues that Plaintiffs fail to allege the causation element of any of their negligence claims and the breach element of their manufacturing defect and failure to warn claims.  (*See* Doc. No. 17 at 10–16.)  SEA further contends that Plaintiffs' negligence claims based on SEA's failures to "properly inspect and/or test," to "adequately instruct, supervise, and/or train servants, employees and agents," and to "retain competent, qualified, and/or able agents, employees or servants" are based on purely conclusory allegations and are not cognizable negligence theories

in the products liability context.  (*See id.* at 16 n.7.)  The Court agrees and finds that Plaintiffs'

Complaint fails to state any plausible negligence claim against SEA.

  **Causation.**  The Complaint alleges that Plaintiffs' oven range "malfunctioned" due to a

"defect which caused the burner control knobs to operate unintentionally" and ignite

"combustibles at or near the stove," which damaged Plaintiffs' property.  (Doc. No. 1-3 ¶¶ 16–

18.)  A "subsequent investigation conducted after the loss determined" that this alleged defect

directly and proximately caused Plaintiffs' property damage.  (*Id.* ¶ 17.)  According to Plaintiffs,

"[s]imply [alleging] the happening of the unintentional operation of the burner control knob[s]

causing a fire" is sufficient to allege that the "defect was a proximate cause of plaintiff's

injuries."  (Doc. No. 23 at 11.)  But "[t]he mere happening of an accident or an injury does

not . . . make out a prima facie case of negligence."  *State Farm Fire & Cas. Co. v. Waterbury*

*Kitchen & Bath, Inc.*, No. 22-cv-447, 2023 WL 5538048, at *2 (E.D. Pa. Aug. 25, 2023)

(quoting *Amon v. Shemaka*, 214 A.2d 238, 239 (Pa. 1965)).

  Without any allegations as to how the burner control knobs on Plaintiffs' oven range

were "unintentionally turned to the 'on' position," the Complaint merely establishes the

possibility that it was Plaintiffs' purportedly defective oven range that caused the fire damage to

Plaintiffs' property, which does not meet the pleading requirements of Rule 8.  *See Iqbal*, 556

U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))); *Traditions of Am., LP*, 2021 WL

8362166, at *5–6 (granting judgment on the pleadings with respect to negligence claim premised

on allegations attributing a fire that damaged plaintiff's insureds' property to a "dangerously

defective furnace" with "unreasonably dangerous components that caused the furnace to

catastrophically fail and/or malfunction," after finding that the amended complaint failed to allege, among other facts, "what caused the fire contained in the furnace, or to assert why [defendant] is responsible for the furnace fire"); *see also Turturro v. United States*, 629 F. App'x 313, 325 (3d Cir. 2015) (concluding that "[t]he plaintiff may not rely on speculation and conjecture" to establish the requisite causation for a negligence claim).  And the Court will not credit Plaintiffs' conclusory allegation that "[a] subsequent investigation conducted after the loss determined the [ ] damage was caused directly and proximately by a defect which caused the burner control knobs to operate unintentionally and ignite a fire" without any alleged context of this investigation or its purported conclusion as to the cause of Plaintiffs' property damage.  *See Castleberry*, 863 F.3d at 263.

Absent any allegations as to the circumstances that led to the "unintentional operation" of the burner control knobs on Plaintiffs' oven range, the Court cannot reasonably infer that these purportedly defective knobs were both the cause-in-fact and proximate cause of the fire damage to Plaintiffs' property.  *See Turturro*, 629 F. App'x at 324 ("In Pennsylvania, establishing such a causal connection [for a negligence claim] requires demonstrating both but-for and proximate cause.").  The Court thus cannot find that Plaintiffs have alleged the causal connection between any of SEA's purported conduct and Plaintiffs' property damage, which is required to state a plausible negligence claim against SEA.

***Manufacturing Defect.***  "To plead a viable negligent manufacturing claim, 'it is necessary to allege some facts that would plausibly suggest that the manufacturer failed to exercise a reasonable standard of care during the manufacturing process.'"  *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 540 (E.D. Pa. 2021) (quoting *Smith v. Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844, 853 (E.D. Pa. 2017)).  Put differently, "[w]ithout any factual

allegation as to the nature of what went wrong during the manufacturing process, there is no plausible road to recovery for negligent manufacturing." *Smith*, 251 F. Supp. 3d at 853.

The Complaint alleges that Plaintiffs' oven range "malfunctioned" due to "a defect which caused the burner control knobs to operate"—i.e., "turned to the 'on' position"— "unintentionally," that SEA "fail[ed] to manufacture. . . a properly functioning product," and that SEA "manufactur[ed] . . . the product when [it] knew or should have known that the product and/or its component parts would be inadequate for the reasons for which it was purchased." (Doc. No. 1-3 ¶¶ 16–18, 22.)  SEA contends that Plaintiffs cannot premise their negligent manufacturing claim on these purely conclusory allegations and the Complaint fails to allege the nature of the defect or how it supposedly resulted from a manufacturing issue.  (Doc. No. 17 at 13–14; Doc. No. 24 at 7–8.)  The Court agrees.

"Conclusory allegations that a product was negligently manufactured," which are the only allegations in the Complaint supporting Plaintiffs' negligent manufacturing claim, "are not, on their own, sufficient to plead a viable claim." *Foge, McKeever LLC v. Zoetis Inc.*, 565 F. Supp. 3d 647, 654 (W.D. Pa. 2021) (dismissing negligent manufacturing claim premised on conclusory allegations that an equine medication departed from its intended design and contained a manufacturing defect); *see, e.g.*, *McGrain*, 551 F. Supp. 3d at 540–41 (dismissing negligent manufacturing claim for failure to allege "facts concerning Defendants' actual manufacturing process"); *Smith*, 251 F. Supp. 3d at 853 (dismissing negligent manufacturing claim based on conclusory allegation that the manufacture of the product "was negligent" and factual allegations made in support of the strict liability manufacturing defect claim, i.e., that the product broke following implantation under normal and anticipated use and in the absence of any secondary causes, after finding that such factual allegations were insufficient to state a negligence claim

since they "solely address the product, and not the Defendants' conduct"); *see also Wesley v. Samsung Electronics Am., Inc.*, No. 20-cv-18629, 2022 WL 16509541, at *1, 3–5 (D.N.J. Oct. 28, 2022) (dismissing claims for breach of warranties and statutory consumer protection claims for failure to adequately allege a defect, where the complaint "names the defective component and the effect of the defect" but "fails to allege specifically what is defective about the part").

Plaintiffs also rely on "SEA's decision to issue an informational recall," which SEA references in a footnote in its briefing (Doc. No. 17 at 8 n. 2), as support for their negligent manufacturing claim, arguing that SEA "all but fully admits" in that recall that the oven range "was not only defective, but, that it *should not have* been susceptible to 'unintentional operation' or 'inadvertent activation.'" (*See* Doc. No. 23 at 15–16.) But, even considered as a matter of public record, *see Schmidt*, 770 F.3d at 249, that recall makes no mention that anything "went wrong during the manufacturing process," *Smith*, 251 F. Supp. 3d at 853.

Accordingly, the Court finds that Plaintiffs have not pleaded a plausible negligent manufacturing defect claim against SEA based on their additional failure to allege SEA's failure to exercise reasonable care during the process of manufacturing the subject oven range.

***Failure to Warn.***  "To assert a viable negligent failure to warn claim, a plaintiff must allege facts sufficient to plausibly show that the defendant 'failed to exercise reasonable care to inform those for whose use the product is supplied of the facts which make it likely to be dangerous.'" *McGrain*, 551 F. Supp. 3d at 542 (quoting *Baldino v. Castagna*, 478 A.2d 807, 810 (Pa. 1984)) (cleaned up).  Accordingly, the complaint must allege what warnings were provided with the product and how those warnings were inadequate, i.e., what additional warnings should have been provided.  *See Foge*, 565 F. Supp. 3d at 654–55; *McGrain*, 551 F. Supp. 3d at 542.

The Complaint alleges that SEA "fail[ed] to provide safe and adequate warnings or instructions with [the oven range]" and "fail[ed] to adequately warn the Plaintiffs and others of [the oven range's] dangerous and hazardous conditions." (Doc. No. 1-3 ¶ 22.) SEA argues that these conclusory allegations—without any factual allegations about the warnings that were provided by SEA, why those warnings were inadequate, or how they caused Plaintiffs' property damage—are woefully insufficient to plausibly plead a negligent failure to warn claim. (Doc. No. 17 at 15–16.) Again, the Court agrees.

Plaintiffs' assertion that they need not allege "what warnings or instructions should have been included or explain[ ] how their inclusion would have improved the product's warnings and instructions" because these are "issue[s] for discovery and expert reports" is contrary to the many decisions of courts in this Circuit that have held otherwise. (Doc. No. 23 at 17.) *See, e.g.*, *Foge*, 565 F. Supp. 3d at 654–55 (dismissing negligent failure to warn claim based on plaintiffs' failure to "specify what information was missing from Defendant's warnings or how and why the warnings were inadequate"); *McGrain*, 551 F. Supp. 3d at 543 (dismissing failure to warn claim based on plaintiffs' failure to "specify what information was missing from Defendants' warnings"); *Bergstresser v. Bristol-Myers Squibb Co.*, No. 12-cv-1464, 2013 WL 1760525, at *5 (M.D. Pa. Apr. 24, 2013) (concluding that negligent failure to warn claim was insufficiently pleaded where the complaint failed to "indicate what warning should have been given"). And even if Plaintiffs were not required to allege the information missing from SEA's warnings that made the warnings inadequate (and they are), they have not even alleged what warnings SEA *did* provide with the oven range. *See Bergstresser*, 2013 WL 1760525, at *5 (finding that plaintiff's failure to "address the warnings provided on the [product's] label" was one of several factual deficiencies with plaintiff's negligent failure to warn claim).

Because the Complaint contains no allegations about the warnings that SEA provided with the subject oven range or how those warnings were inadequate, Plaintiffs have not plausibly pleaded a negligent failure to warn claim against SEA.

**Failure to Inspect and/or Test.**  Count I of Plaintiffs' Complaint includes a claim for "failure to properly inspect and/or test the product and/or its component parts" (Doc. No. 1-3 ¶ 22), which SEA argues is not a viable negligence theory in the products liability context.  (Doc. No. 17 at 16 n. 7.)  The Court agrees.  A negligent failure to test claim is not a cognizable standalone claim under Pennsylvania law.  *See, e.g.*, *Oddi v. Ford Motor Co.*, 234 F.3d 136, 143–44 (3d Cir. 2000) (finding that Pennsylvania does not recognize an "independent tort for 'negligent failure to test'" because such a claim is "nothing more than a routine products liability case based on negligence"); *Blanding v. Walmart Inc.*, No. 23-cv-5142, 2024 WL 3433321, at *7, 9 (E.D. Pa. July 15, 2024) (dismissing negligent failure to test claim with prejudice because "under Pennsylvania law, failure to test is not a standalone cause of action").  Because Plaintiffs cannot assert such a claim, their "failure to properly inspect and/or test" negligence claim will be dismissed with prejudice.

**Negligent Supervision and Hiring.**  SEA also contends that Plaintiffs' negligence claims based on SEA's failures to "adequately instruct, supervise, and/or train servants, employees and agents" and to "retain competent, qualified, and/or able agents, employees or servants" (Doc. No. 1-3 ¶ 22) are not cognizable in the products liability context and otherwise lack any supporting factual allegations in the Complaint.  (Doc. No. 17 at 16 n.7.)  The Court has found no authority that supports SEA's contention that Plaintiffs' negligent supervision and hiring claims are not viable claims in products liability actions.  And, to the contrary, at least one court in this Circuit has acknowledged the viability of such claims.  *See Slemmer v. McGlaughlin Spray Foam*

*Insulation, Inc.*, 955 F. Supp. 2d 452, 458 (E.D. Pa. 2013) (in products liability case, acknowledging that "Pennsylvania law allows a claim against an employer for negligent supervision of an employee" but concluding nevertheless that plaintiffs failed to state a claim of negligent supervision).  But the Court agrees with SEA that the Complaint is devoid of any factual allegations relating to either claim, and for that reason, Plaintiffs have failed to state plausible negligent supervision or negligent hiring claims.

***

In sum, based on the factual deficiencies outlined above, the Court will dismiss all of Plaintiffs' negligence claims asserted against SEA in Count I of the Complaint as insufficiently pleaded.  Except for their failure to test claim, which is not a viable independent cause of action, Plaintiffs will be given leave to amend their negligence claims against SEA.

### B.    The Complaint Fails to State a Plausible Strict Liability Claim against SEA.

Next, Plaintiffs bring strict liability claims (Count II) against SEA.  "Pennsylvania law recognizes three different types of defects that can give rise to a strict-liability claim:  a design defect, a manufacturing defect, and a failure to warn defect."  *Traditions of Am., LP*, 2021 WL 8362166, at *6 (citing *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995)).  Plaintiffs allege all three theories of strict liability.  (*See* Doc. No. 1-3 ¶¶ 26–33.)

"In products liability cases, Pennsylvania follows the formulation of strict liability set out in Section 402A of the Restatement (Second) of Torts," which "allows a plaintiff to recover where their injury was caused by a product in 'a defective condition unreasonably dangerous to the user or consumer.'"  *Smith*, 251 F. Supp. 3d at 847 (quoting *A-Best Prods. Co.*, 665 A.2d at 1170–71).  To plausibly plead a strict products liability claim, a plaintiff must allege that:  (1) the product is in a defective condition or is unreasonably dangerous; (2) the defect was the proximate cause of the plaintiff's injuries; and (3) the defect existed at the time it left the

12

manufacturer's control." *Traditions of Am., LP*, 2021 WL 8362166, at *6.

In support of dismissal of Plaintiffs' strict liability claims, SEA points to Plaintiffs' purported failures to allege causation with respect to all three claims and the defective condition and/or unreasonably dangerous nature of the oven range for purposes of pleading their manufacturing defect and failure to warn claims. (*See* Doc. No. 17 at 10–16.) The Court agrees and finds that Plaintiffs' Complaint fails to state any plausible strict liability claim against SEA.

**Causation.** To state a plausible strict liability claim against SEA, Plaintiffs must allege a causal relationship between their property damage and the defective condition of SEA's oven range. *See Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 524 (W.D. Pa. 2003) ("Proof of causation is a necessary element in a products liability action. Absent a causal relationship between the defendant's product and the plaintiff's injury the defendant cannot be held liable on a theory of negligence, strict liability, or misrepresentation."); *Thomas v. Hamilton Beach/Proctor-Silex, Inc.*, No. 04-cv-01841, 2007 WL 2080485, at *3 (W.D. Pa. July 13, 2007) ("The law is well established in this Commonwealth that Plaintiff must prove, as a necessary element of her products liability action, a causal connection between the injuries she claimed she sustained and her alleged exposure to a substance released or emitted from the toaster oven, regardless of whether [the] claim sounds in negligence, strict liability or breach o[f] warranty."); *see also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 n.23 (3d Cir. 1999) ("[P]laintiffs' strict liability, negligence, and breach-of-warranty claims . . . each requires a proximate connection between the defendants' conduct and the plaintiffs' injuries[.]"). To establish the requisite causal relationship for their strict liability claims, Plaintiffs rely on minimal and conclusory allegations that Plaintiffs' oven range "malfunctioned" due to a "defect which caused the burner control knobs to operate unintentionally" and ignite

"combustibles at or near the stove causing fire damages to [Plaintiffs'] property," as determined by a "subsequent investigation."  (Doc. No. 1-3 ¶¶ 16–18.)  As previously concluded with respect to Plaintiffs' negligence claims against SEA, the Court cannot reasonably infer a causal connection between the purportedly defective knobs on the oven range and the fire damage to Plaintiffs' property from these allegations as required to plead a strict liability claim against SEA.

     ***Manufacturing Defect.***  "[T]o state a strict liability claim due to a manufacturing defect, [Plaintiffs] must allege 'what constitutes the manufacturing defect.'"  *Blanding*, 2024 WL 3433321, at *7 (internal quotation omitted).  The existence of a manufacturing defect that forms the basis of a strict liability claim may be established by either demonstrating "a breakdown in the machine or a component thereof" or "rul[ing] out abnormal use or secondary causes of a malfunction."  *Smith*, 251 F. Supp. 3d at 851 (internal quotations omitted).

     The Complaint alleges that SEA "manufactured . . . the subject range in a defective condition, unreasonably dangerous to the consumers."  (Doc. No. 1-3 ¶ 28.)  But it includes scarce and purely conclusory allegations about that defective condition—"a defect which caused the burner control knobs to operate," i.e., to be "turned to the 'on' position."  (*Id.* ¶¶ 16–18.)  "Mere conclusory statements that the [product] was defective as to . . . the way it was manufactured do not satisfy the pleading requirements at the motion to dismiss stage."  *CM Regent Ins. Co. v. CAMaster, Inc.*, No. 22-cv-205, 2022 WL 17721589, at *5 (M.D. Pa. Dec. 15, 2022).  And the Complaint lacks any allegations either directly attributing the defective condition to a breakdown in the oven range or any of its components or from which the Court can reasonably infer that the purported unintentional operation of the burner control knobs was not due to abnormal use or reasonable secondary causes.  *Compare Blair v. AbbVie Inc.*, No. 23-cv-

1871, 2025 WL 57198, at *1 (W.D. Pa. Jan. 9, 2025) (dismissing strict liability manufacturing defect claim premised on "allegations [that] are too broad and conclusory to support even [the malfunction] theory or liability" in lieu of direct evidence of a product defect), *and CM Regent Ins. Co.*, 2022 WL 17721589, at *5 (dismissing strict liability manufacturing claim based on assertion of "the legal conclusion" that the product has a manufacturing defect without alleging what constitutes the manufacturing defect or that there were no abnormal uses of the product or secondary causes of a malfunction), *with Smith*, 251 F. Supp. 3d at 851–52 (denying motion to dismiss strict liability manufacturing claim after finding "[t]he existence of a manufacturing defect is satisfied by the allegation that the [product] broke down after it was implanted into [plaintiff], where it was subjected to normal and anticipated use, and that there were no reasonable secondary causes").

Therefore, the Court finds that Plaintiffs have not pleaded a plausible strict liability claim due to a manufacturing defect against SEA for the additional reason that their Complaint fails to allege, either directly or circumstantially, what constitutes the manufacturing defect.

***Failure to Warn.*** To state a strict liability claim based on a failure to warn requires alleging "only two things: that the product was sold in a defective condition unreasonably dangerous to the user, and that the defect caused plaintiff's injury." *Blanding*, 2024 WL 3433321, at *6 (quoting *Philips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170–71 (Pa. 1995)). "A product is defective under a failure-to-warn theory 'if it has an inadequate warning that made the product unreasonably dangerous.'" *Id.* (quoting *White v. Stanley Black & Decker, Inc.*, 514 F. Supp. 3d 684, 697 (W.D. Pa. 2021)); *see Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 725 (E.D. Pa. 2016) ("In a [strict liability] failure-to-warn case, the threshold determination is whether the product is defective for lack of sufficient warnings. A plaintiff therefore must show

that the product was sold without sufficient warnings to adequately notify the intended user of the unobvious dangers inherent in the product.") (internal quotations omitted)).

The Complaint alleges that SEA "sold the subject range in a defective condition, unreasonably dangerous to consumers," and the defective condition included "use-instruction and/or warnings defects; and/or a failure to warn of the design, manufacturing, and/or component defects, and/or properly provide warning and/or safe use instructions."  (Doc. No. 1-3 ¶¶ 28, 30.) Plaintiffs "plead[ ] no facts—only legal conclusions—about the inherent dangerousness of the product, the nature of the warnings accompanying the product, whether and how those warnings were unsafe or inadequate, or how [they] would have avoided the risk had [they] been warned." *Blanding*, 2024 WL 3433321, at *7 (dismissing negligence and strict liability claims for failure to warn based on purely conclusory allegations about the inherent dangers of and the warnings, or lack thereof, associated with the product).  For that additional reason, the Complaint does not state a strict liability claim based on a failure to warn against SEA.

***

Because the Complaint lacks sufficient allegations as to causation and the nature of the manufacturing and failure to warn defects, the Court will dismiss all of Plaintiffs' strict liability claims asserted against SEA in Count II of the Complaint.  Plaintiffs will be given leave to amend their strict liability claims against SEA.

### C.      The Complaint Fails to State a Plausible Breach of Warranty Claim against SEA.

That leaves Plaintiffs' breach of warranties claims (Count III) against SEA.  Plaintiffs assert that SEA breached "any and all express warranties," the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose as set forth in 13 Pa. Cons. Stat. §§ 2313, 2314(c), and 2315, respectively.  (Doc. No. 1-3 ¶¶ 34–40.)  SEA moves for the dismissal of these breach of warranties claims based on Plaintiffs' failure to allege factual

support for any breach or causation.  (Doc. No. 17 at 10–12, 16–19; Doc. No. 24 at 9.)  As explained below, Plaintiffs' failure to allege that SEA breached any warranty, whether express or implied, necessitates the dismissal of their breach of warranties claims against SEA.

     ***Breach of Express Warranty.***  "Express warranties, as distinguished from implied warranties, do not independently arise by operation of state law." *Traditions of Am., LP*, 2021 WL 8362166, at *8 (internal quotation omitted).  Rather, an express warranty is "specifically negotiated" and "created by a seller through any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Id.* (internal quotations omitted); *see Foge*, 565 F. Supp. 3d at 655 ("To create an express warranty, the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." (internal quotation omitted)).  To plead a plausible claim for breach of express warranty, a plaintiff must allege, with "some level of meaningful detail," that: "(1) [defendant] breached or failed to meet its warranty promise, (2) the breach was the proximate cause of the harm, and (3) there were ensuing damages." *Foge*, 565 F. Supp. 3d at 655; *Stevens v. C.R. Bard, Inc.*, No. 17-cv-1388, 2018 WL 692097, at *7 (W.D. Pa. Feb. 2, 2018).  SEA argues that Plaintiffs fail to allege the terms of any express warranty, how that warranty was conveyed to them, how they relied on that warranty, or how any warranty term was breached.  (Doc. No. 17 at 17.)  The Court agrees.  Without any such allegations, the Complaint falls far below the requisite level of "meaningful detail" to state a plausible claim for breach of express warranty.  *See, e.g.*, *Foge*, 565 F. Supp. 3d at 655–56 (dismissing breach of express warranty claim premised on "conclusory and non-fact specific allegations as to the terms of an alleged express warranty"); *McGrain*, 551 F. Supp. 3d at 543–44 ("Without any facts to support the existence of an 'express warranty,' Plaintiff has not plausibly

stated a claim for breach of express warranty.'").

      ***Breach of Implied Warranties.***  "Both the implied warranty of merchantability and the [implied] warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).  The implied warranty of merchantability "requires that the goods in question be 'fit for the ordinary purposes for which such goods are used.'" *Smith*, 251 F. Supp. 3d at 854 (quoting 13 Pa. Cons. Stat. § 2314(b)(3)).  The implied warranty of fitness for a particular purpose "is more exacting," requiring that the "seller had reason to know of the buyer's particular purpose at the time of contracting and that the buyer was relying on the seller's expertise." *Altronics of Bethlehem, Inc.*, 957 F.2d at 1105 (citing 13 Pa. Cons. Stat. § 2315).  To establish a breach of either warranty, a plaintiff must allege that the good they purchased from defendant was defective.  *Id.*  SEA argues that Plaintiffs' breach of implied warranty of merchantability claim fails because Plaintiffs do not allege that the range was unsuitable for its ordinary purpose or that it fell below commercial standards when properly used.  (Doc. No. 17 at 18–19.)  And SEA contends that Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose is insufficiently pleaded because Plaintiffs have not alleged their particular purpose for buying the oven range or their reliance on SEA in any way.  (*Id.* at 17–18.) The Court agrees with both arguments.

      A plausible claim for breach of the implied warranty of merchantability must be premised on allegations that "(1) the product malfunctioned; (2) that the plaintiff used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." *Blanding*, 2024 WL 3433321, at *8; *see Chandler v. L'Oreal USA, Inc.*, 340

F. Supp. 3d 551, 565 (W.D. Pa. 2018).  Plaintiffs rely on conclusory allegations that their oven range "malfunctioned" due to a "defect which caused the burner control knobs to operate unintentionally" and ignite "combustibles at or near the stove causing fire damages to [Plaintiffs'] property," as determined by a "subsequent investigation," and they do not allege any facts from which the Court can infer that Plaintiffs used the oven range as intended or reasonably expected by SEA and the absence of reasonable secondary causes of Plaintiffs' property damage. (Doc. No. 1-3 ¶¶ 16–18, 36.)  Plaintiffs, therefore, have failed to state a claim for breach of the implied warranty of merchantability against SEA.

To state a claim for breach of the implied warranty of fitness for a particular purpose, Plaintiffs must allege that SEA was aware that their "intended usage [of the oven range] was for a particular purpose," i.e., "not an ordinary purpose."  *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 345 (E.D. Pa. 2022) ("A particular purpose is specialized rather than typical.").  Plaintiffs allege that SEA "had reason to know the particular purpose to which the subject range would be used (i.e., residential application)."  (Doc. No. 1-3 ¶ 35.)  The Court cannot infer from this lone allegation that "residential application" is a particular purpose as opposed to an ordinary purpose of the oven range.  *See, e.g.*, *Kovalev*, 647 F. Supp. 3d at 345 (dismissing claim for breach of implied warranty of fitness for a particular purpose premised on allegation that defendant's "dangerous and contaminated bread was not suitable for human consumption" after finding that plaintiff failed to allege "another purpose for bread beyond its ordinary purpose of consumption"); *Blanding*, 2024 WL 3433321, at *8 (dismissing claim for breach of implied warranty of fitness for a particular purpose because plaintiff alleged "no purpose for which the [product] was required—much less that it was for a particular purpose").

A plausible claim for breach of this implied warranty also requires allegations that establish Plaintiffs' reliance, as the buyers, "on the skill or judgment of the seller to select or furnish suitable goods." *Blanding*, 2024 WL 3433321, at *8. Plaintiffs merely allege that SEA "had reason to know . . . they were being relied upon to furnish a suitable product." (Doc. No. 1-3 ¶ 35.) The Complaint lacks any allegations detailing how SEA provided any skill or judgment in furnishing the oven range to Plaintiffs upon which Plaintiffs relied. *See Blanding*, 2024 WL 3433321, at *8 (dismissing claim for breach of implied warranty of fitness for a particular purpose that lacked any underlying allegations of "how either [defendant] provided any expertise or judgment when representing the purpose of the [product]"). Accordingly, Plaintiffs have failed to state a claim for breach of the implied warranty of fitness for a particular purpose against SEA.

***

In sum, Plaintiffs have failed to plausibly plead any breach of warranty claim against SEA and will dismiss all such claims asserted in Count III of the Complaint. Plaintiffs will be given leave to amend these claims.

**IV.    CONCLUSION**

For the foregoing reasons, the Court grants SEA's motion to dismiss and Plaintiffs'

request for leave to amend their Complaint.  *See* Fed. R. Civ. P. 15(a)(2); *Blanding*, 2024 WL

3433321, at *8 ("[Rule 15] expresses 'a preference for liberally granting leave to amend' unless

'amendment would cause undue delay or prejudice, or that amendment would be futile.'"

(quoting *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000))).  For the same reasons, the Court

also dismisses Plaintiffs' identical claims against Defendants Home Depot (Counts IV–IX) and

fictitious entities "ABC Manufacturing Company(ies) 1-5" and "ABC Sales Company(ies) 1-5"

(Counts X–XV).  *See, e.g.*, *Anderson v. Local 435 Union*, 791 F. App'x 328, 332 (3d Cir. 2019)

(affirming district court's *sua sponte* dismissal of complaint against non-moving defendant based

on the same grounds raised by moving defendant, where plaintiff "had the opportunity to defend

the sufficiency of those identical claims in response to [moving defendant's] motion to

dismiss"); *Coulter v. Unknown Probation Officer*, 562 F. App'x 87, 89 n.2 (3d Cir. 2014)

(affirming district court's *sua sponte* dismissal of complaint for failure to state a claim against a

non-moving defendant based on grounds raised by moving defendants but common to all

defendants and where plaintiff had an opportunity to respond).  An appropriate Order follows.